Mark CARNEY, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A04–513.

Supreme Court of Minnesota.

March 10, 2005.

Deborah K. Ellis, St. Paul, MN, for Appellant.

Mike Hatch, Attorney General, Kimberly Parker, Assistant Attorney General, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Mark Carney appeals from a summary denial of his petition for postconviction relief alleging, *inter alia,* that he received ineffective assistance of trial counsel because his lawyer did not adequately investigate his mental health history and failed to present medical evidence at trial that may have supported Carney's heat of passion defense and mitigated the element of premeditation. The postconviction court summarily denied Carney's petition on the ground that his claims were procedurally barred under *State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737 (1976). The postconviction court further stated that even if Carney's ineffective assistance of counsel claim was not procedurally

barred, it failed on the merits. We affirm the postconviction court's denial of relief.

The facts of this case are fully detailed in the opinion that we issued in response to Carney's direct appeal. *State v. Carney*, 649 N.W.2d 455, 456–60 (Minn.2002). The following summary provides context for the issues Carney raises in this appeal. In August 2000, Mark Carney was indicted for the first-degree premeditated murder of John Voeller. At the time of the murder, Carney believed that Voeller was having an affair with his wife. In February 2001, Carney was tried before a Crow Wing County jury and found guilty of first-degree premeditated murder under Minn.Stat. § 609.185(1) (2004) and sentenced to life in prison.

Before trial, Carney's counsel consulted with Dr. Todd Johnson, a doctor of pharmacy, who researched the drug Zoloft and reviewed Carney's medical records. Johnson then submitted a memorandum to Carney's counsel stating that in his professional opinion "it would be difficult to attribute Mr. Carney's behavior to an adverse consequence of his Zoloft therapy." At trial, Carney testified that in the spring of 1999 he experienced a loss of motivation and had trouble concentrating. After talking with his wife, he saw a physician and received a prescription for the anti-depressant Zoloft, which he stopped taking after three days.

Carney testified that in May 2000 his marriage had grown increasingly troubled, and that he again saw his doctor who prescribed the anti-depressant Wellbutrin, which he began to take. One month later, Carney was taken to the hospital by his parents after he threatened to kill himself. He checked himself out the next day. Shortly thereafter, Carney returned to his physician and received a second prescription for Zoloft, which he was taking at the time of the shooting. Although Carney testified at trial that he had taken Zoloft for three days the previous year, he did not testify that he was taking Zoloft at the time of the shooting. Rather, he testified only that he had "changed" his medication after he spent the night at the hospital.

During his testimony, Carney admitted that he shot Voeller, but claimed that he acted in the heat of passion and without premeditation, and requested a heat of passion manslaughter instruction. *Id.* at 459–60. The district court denied this request and Carney was convicted of first-degree premeditated murder. *Id.* On direct appeal Carney argued that the district court erred in denying his request for a heat of passion manslaughter instruction. *Id.* at 460. We affirmed his conviction, holding, *inter alia*, that the district court did not err in refusing to submit a heat of passion manslaughter instruction. *Id.* at 462–63.

Carney then filed a petition for postconviction relief, claiming that he received ineffective assistance of counsel because his lawyer did not adequately investigate his mental health history, and thus failed to present medical evidence that would have negated the element of premeditation and supported Carney's heat of passion defense. Relying on *Knaffla*, 309 Minn. at 246, 243 N.W.2d at 737, the postconviction court held that, because Carney knew of the claims at the time of his direct appeal but failed to bring those claims, and because no additional factfinding was required, his claims were procedurally barred. The postconviction court further noted that had Carney's claims not been barred under *Knaffla*, they would have nonetheless failed on the merits.

Because claims of ineffective assistance of counsel involve mixed questions of law and fact, we review postconviction court decisions regarding such claims de

novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn.2004). A defendant is permitted to seek postconviction relief "to vacate and set aside the judgment * * * or grant a new trial * * * or make other disposition as may be appropriate." Minn.Stat. § 590.01, subd. 1 (2004). The petitioner bears the burden of establishing the facts alleged in the petition by a fair preponderance of the evidence. Minn.Stat. § 590.04, subd. 3; *McKenzie v. State*, 687 N.W.2d 902, 905 (Minn.2004). A district court must grant an evidentiary hearing for any postconviction petition filed, unless the issues raised in the petition conclusively show that the petitioner is not entitled to relief. Minn.Stat. § 590.04, subd. 1; *Roby v. State*, 531 N.W.2d 482, 483 (Minn.1995).

■ When a direct appeal has been taken and litigated before this court, all matters raised during that appeal and all claims known but not raised by the defendant will not be considered upon a subsequent petition for postconviction relief. *Ives v. State*, 655 N.W.2d 633, 635 (Minn. 2003) (citing *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741) ("*Knaffla* rule"). This court has established two exceptions to the *Knaffla* rule: 1) where a claim is so novel that the legal basis was not available on direct appeal, or 2) where the petitioner did not "deliberately and inexcusably" fail to raise the claim on direct appeal and fairness requires its consideration. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001).

In this case, it is not disputed that at the time of his direct appeal Carney was aware of the strategy his counsel pursued at trial, including what evidence had been presented to the jury and what evidence had been withheld. Thus, Carney's ineffective assistance of trial counsel claim is *Knaffla*-barred unless Carney can demonstrate that it falls within one of the two established exceptions.

■ Because the legal basis for Carney to bring an ineffective assistance of trial counsel claim was available on direct appeal, the first exception does not apply. But, under the second *Knaffla* exception, a claim of ineffective assistance of trial counsel known but not raised at the time of direct appeal may be brought in a postconviction petition if the claim cannot be "evaluated by an appellate court on direct appeal based on the briefs and trial court transcript, without any additional factfinding." *Robinson v. State*, 567 N.W.2d 491, 495 (Minn.1997); *Torres v. State*, 688 N.W.2d 569, 572 (Minn.2004) ("A claim of ineffective assistance of trial counsel that can be decided on the basis of the trial court record must be brought on direct appeal and is procedurally barred when raised in a postconviction petition.") [1]; *see also Dukes*, 621 N.W.2d at 255.

Thus, the issue before us is whether any information beyond the briefs and trial court record is needed to resolve Carney's ineffective assistance of trial counsel claim. If so, Carney is entitled to an evidentiary hearing to develop a proper record. If not, his ineffective assistance of trial counsel claim was properly barred under *Knaffla* by the postconviction court.

We have previously held that an ineffective assistance of trial counsel claim was not *Knaffla*-barred, despite an appellant's failure to raise it on direct appeal, when it involved attorney-client communications and required additional factfinding. *See Robinson*, 567 N.W.2d at 494–95 (concluding that where an attorney allegedly failed

---

1. In *Torres*, we reiterated that the "best procedure" for raising an ineffective assistance of trial counsel claim that cannot be decided on the trial court record "is to file a petition for postconviction relief before appeal." 688 N.W.2d at 572, n. 1 (quoting *Robinson*, 567 N.W.2d at 495 n. 3 (citing *Roby*, 531 N.W.2d at 484, n. 1)).

to communicate two plea offers, an evidentiary hearing was required to determine "whether in fact the trial attorney communicated the plea offers."); *Dukes,* 621 N.W.2d at 255 (concluding that an evidentiary hearing was required to establish whether the appellant had consented to his attorney's decision to concede appellant's guilt). But, "not all ineffective assistance of trial counsel claims are alike." *Torres,* 688 N.W.2d at 572. In this case, Carney's ineffective assistance of trial counsel claim does not concern attorney-client communications. Rather, Carney's claims focus on trial strategy issues.

Specifically, Carney argues that his attorney's decision not to investigate his medical history in more detail, and not to present expert medical testimony regarding Carney's mental state, was strategically unsound. Carney claims that such testimony would have corroborated his claim that he was depressed and acted in the heat of passion when he shot Voeller. Carney argues that had his counsel presented expert testimony, the district court may have given a heat of passion manslaughter instruction. According to Carney, his claims are not procedurally barred under *Knaffla* because, although he knew of the general facts underlying his ineffective assistance of counsel claim at the time of his direct appeal, additional factfinding is necessary to determine the merits of his ineffective assistance of counsel claim.

▇▇▇ We conclude that Carney's ineffective assistance of trial counsel claim can be decided on the basis of the briefs and trial court record, and thus should have been brought prior to—or at the time of— his direct appeal. *See Robinson,* 567 N.W.2d at 495. In deciding ineffective assistance of trial counsel claims, we review whether "representation fell below an objective standard of reasonableness" and whether "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Opsahl,* 677 N.W.2d at 421 (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong presumption that counsel's performance was reasonable, *Boitnott v. State,* 631 N.W.2d 362, 370 (Minn.2001), and we give particular deference to trial strategy. *State v. Lahue,* 585 N.W.2d 785, 789 (Minn.1998). We have acknowledged that "it is 'all too easy for a court, examining counsel's defense after it has proved unsuccessful to conclude that a particular act or omission of counsel was unreasonable.'" *State v. Rhodes,* 657 N.W.2d 823, 844 (Minn.2003) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Thus, we "'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,'" with a high degree of deference. *Rhodes,* 657 N.W.2d at 844 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

The trial court record and the briefs indicate that Carney's counsel's representation did not fall below an objective standard of reasonableness. In this case, very few facts were disputed. Carney's actions on the morning of the shooting were corroborated by a number of witnesses, and the shooting itself took place in a public space, with a number of onlookers. Given the volume of evidence regarding Carney's activities the day of the shooting—particularly the undisputed fact that Carney shot Voeller twice in the head at close range with a shotgun—his counsel had few plausible defense strategies from which to choose. Carney concedes in his postconviction petition that his counsel investigated a "Zoloft defense," and, based on the recommendation of an expert, concluded that presenting such a defense was not a

reasonable tactic. Instead, Carney's counsel chose to present the case under a heat of passion theory.

Carney was aware throughout trial that his counsel pursued neither an involuntary intoxication defense nor a defense based on expert medical testimony regarding Carney's mental health, and stated in his petition for postconviction relief that prior to trial he agreed with his counsel's strategy "to concede that he was the person who fired the fatal shot causing the victim's death." This indicates that he not only was aware of his counsel's strategy, but that he approved of it. Given the facts of this case and the high degree of deference we give to questions of trial strategy, we conclude that the trial record and briefs clearly establish that no additional fact-finding would have been required to decide Carney's ineffective assistance of trial counsel claim, and that therefore the second *Knaffla* exception does not apply. We thus hold that the postconviction court did not abuse its discretion in concluding that Carney's claim is barred under *Knaffla*.

Affirmed.