Cletus Eugene SCHNEIDER,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A06–625.

Supreme Court of Minnesota.

Jan. 4, 2007.

Kyle D. White, St. Paul, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, James Backstrom, Dakota County Attorney, Nicole E. Nee, Assistant County Attorney, Dakota County Judicial Cener, Hastings, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

Following trial by jury in Dakota County, the district court entered judgment of conviction for first-degree premeditated murder and sentenced appellant Cletus Eugene Schneider to life in prison for the killing of his wife, Dorothy Sandburg. On direct appeal, Schneider's sole claim was that the evidence was not sufficient to support the verdict and we affirmed. *State v. Schneider*, 597 N.W.2d 889, 890 (Minn.1999).

■ Schneider petitioned for postconviction relief claiming that (1) he was denied effective assistance of counsel because neither his trial counsel nor his appellate counsel raised a *Frye–Mack* challenge or otherwise contested the admissibility of DNA evidence;[1] (2) he was denied effective assistance of counsel when his trial counsel failed to request that the trial judge be removed because the judge had also presided over Schneider's marital dissolution proceedings; and (3) newly discovered evidence entitles him to a new trial. The postconviction court denied relief

without an evidentiary hearing. We affirm.

The facts of this case are recited in our earlier opinion affirming Schneider's conviction. *Schneider*, 597 N.W.2d at 890–92. We repeat here only those facts necessary to give context to the claims now before us.

On June 13, 1997, Sandburg was found dead in her home in Burnsville, Minnesota. Investigators from the Bureau of Criminal Apprehension (BCA) collected and examined four drops of blood from the scene. One drop of blood was collected from Sandburg's abdomen and three were collected from the floor near the body. A fifth drop of blood was collected from Sandburg's shoe after the autopsy. These drops of blood were selected because there were indications that they may have fallen from the perpetrator.

After receiving the results of the DNA testing, police arrested Schneider. He was indicted on multiple charges of murder. In pretrial hearings, Schneider's attorney expressly waived a *Frye–Mack* hearing with respect to polymerase chain reaction (PCR), one of two types of DNA testing performed in the case. At trial, Schneider did not object to the introduction of the DNA evidence.

BCA analyst Dolores Schoenbauer testified that she performed two types of tests on the five drops of blood. A PCR test revealed that each of the five drops of blood was a mixture of two or more persons' DNA. Schoenbauer testified that Schneider's DNA was consistent with the predominant DNA types from each of the

---

1. In Minnesota, evidence obtained from a new scientific technique is admissible if (1) the technique is generally accepted within the relevant scientific community and (2) the particular evidence derived from the technique has a foundation that is scientifically reliable.

*State v. Roman Nose*, 649 N.W.2d 815, 818 (Minn.2002). The two prongs of the test derive, respectively, from *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923), and *State v. Mack*, 292 N.W.2d 764, 768 (Minn.1980). *See Roman Nose*, 649 N.W.2d at 818.

samples. Schoenbauer concluded that there was not enough DNA present in the drops of blood on the floor and on Sandburg's abdomen, so she combined the four samples and performed a restriction fragment length polymorphism (RFLP) test on the combined sample. She also performed an RFLP test on the shoe sample. Schoenbauer concluded that the DNA in both the combined sample and the shoe sample matched Schneider's DNA.

At trial the defense questioned the BCA's procedures for collecting and analyzing the blood samples. The state's experts were extensively cross-examined and the defense called two of its own expert witnesses. The defense alleged numerous errors with respect to the DNA collection and analysis, and the defense's expert concluded that both the PCR and RFLP test results were unreliable and inconclusive. The defense's expert further testified that the results of the RFLP tests were consistent with contamination.

Schoenbauer admitted making some errors, but testified that they were merely transcription errors that were quickly corrected and did not in any way impact the results of the tests. The state's rebuttal witness testified that the DNA testing results were "excellent," "valid," and reliable.

On direct appeal, we concluded that Schneider's counsel made strategic decisions as to whether to request a *Frye–Mack* hearing or object to the admission of DNA evidence. *Schneider*, 597 N.W.2d at 894. We characterized the decisions as "tactical" matters of "trial strategy." *Id.*

### I.

A person convicted of a crime may petition for a new trial or other postconviction relief. Minn.Stat. § 590.01, subd. 1 (2004). An evidentiary hearing must be held unless the petition and the record conclusively show that the petitioner is not entitled to relief. Minn.Stat. § 590.04, subd. 1 (2004).

We review the postconviction court's decision to determine whether there is evidence sufficient to support the court's findings, and we will not overturn the decision unless the court has abused its discretion. *White v. State*, 711 N.W.2d 106, 109 (Minn.2006). A postconviction court's legal determinations, including legal determinations of ineffective assistance of counsel, however, are reviewed de novo. *Schleicher v. State*, 718 N.W.2d 440, 445 (Minn.2006); *Carney v. State*, 692 N.W.2d 888, 890–91 (Minn.2005).

Additionally, if a petitioner has already directly appealed his case, all matters raised on direct appeal and all claims known but not raised will not be considered. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (Minn.1976). There are two exceptions to the *Knaffla* rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review. *White*, 711 N.W.2d at 109. The second exception applies if fairness requires review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Id.*

### II.

Schneider first claims that he was denied effective assistance of counsel because neither his trial counsel nor his appellate counsel raised a *Frye–Mack* challenge or otherwise contested the admissibility of the DNA evidence. Ineffective assistance of trial counsel claims are generally *Knaffla*-barred in a postconviction petition if the claims can be decided on the basis of the trial record and the briefs. *White*, 711 N.W.2d at 110. Under the interests-of-justice exception, however, a petitioner may bring an ineffective-assistance claim, even if known but not raised

on direct appeal, if the claim could not have been decided on direct appeal based on the briefs and trial court transcript without additional fact finding. *Carney,* 692 N.W.2d at 891.

Neither Schneider's appellate counsel nor Schneider in his pro se brief raised his ineffective assistance of trial counsel claim on direct appeal. *See Schneider,* 597 N.W.2d at 894. Schneider knew at the time of the appeal that his trial counsel had failed to object to the introduction of the DNA evidence, and the legal basis for his ineffective-assistance claim was available. *See Carney,* 692 N.W.2d at 891. Furthermore, the interests of justice do not compel us to hear the claim. Schneider did not attach to his postconviction petition an expert affidavit indicating that a *Frye–Mack* hearing would likely have resulted in suppression of the DNA evidence or any other additional information to indicate that his claim could not have been decided on direct appeal based on the briefs and trial court transcript.[2] We therefore conclude that Schneider's claim is barred by *Knaffla.*

We next address Schneider's ineffective assistance of appellate counsel claim. This claim is not barred by *Knaffla* because Schneider could not have known of ineffective assistance of his appellate counsel at the time of his direct appeal. We agree with the postconviction court that Schneider's claim is essentially prem-

ised upon his appellate counsel's failure to raise an ineffective assistance of trial counsel claim. Thus, to prevail on his ineffective assistance of appellate counsel claim, Schneider must first show that his trial counsel was ineffective. *Zenanko v. State,* 688 N.W.2d 861, 865 (Minn.2004). To do so, Schneider must show that his trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, the result of the trial would have been different. *Carney,* 692 N.W.2d at 892.

We presume that trial counsel's performance was reasonable and we give particular deference to trial strategy. *Id.* Schneider has failed to convince us that his trial counsel's decision to forgo a *Frye–Mack* hearing was anything but a strategic and tactical decision. If Schneider's trial counsel determined that the PCR evidence would not be suppressed at a *Frye–Mack* hearing, he may well have decided not to permit the state to preview his vigorous cross-examination of the state's experts or to preview the testimony of the defense experts. Even if Schneider's trial counsel determined that the PCR evidence would be suppressed at a *Frye–Mack* hearing, he may have determined that in light of *State v. Schwartz,* 447 N.W.2d 422 (Minn.1989), that the RFLP evidence would not be suppressed. *See Schwartz,* 447 N.W.2d at 428 (concluding that RFLP DNA testing has gained general acceptance in the scientific

---

**2.** Schneider argues that the second exception applies because his claim involves attorney-client communications and cannot be decided based on the briefs and the trial court transcript. We disagree. Tactical decisions need not be communicated to the client. *See* Minn. R. Prof. Conduct 1.4 cmt. ("In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to de-

scribe trial or negotiation strategy in detail."); *cf. Dukes v. State,* 621 N.W.2d 246, 254–55 (Minn.2001); *Robinson v. State,* 567 N.W.2d 491, 494–95 (Minn.1997). On direct appeal, we concluded that trial counsel's decisions not to request a *Frye–Mack* hearing or object to the admission of the DNA evidence were tactical decisions. *Schneider,* 597 N.W.2d at 894. As we discuss later, Schneider has failed to convince us that our decision was erroneous.

community). If that were the case, Schneider's trial counsel strategically could have determined not to request a pretrial *Frye–Mack* hearing, but instead to attack at trial the collection and examination techniques used by the state in an effort to discredit both the PCR and the RFLP evidence. We give particular deference to trial counsel's strategic decisions and we conclude that Schneider's trial counsel's performance was objectively reasonable.[3]

■■■ Even if we had concluded that trial counsel's decision to forgo a *Frye–Mack* hearing rendered his performance unreasonable, Schneider's ineffective-assistance argument would still fail. If we assume, as Schneider argues, that the PCR method of DNA testing was not generally accepted within the relevant scientific community and hence would have been suppressed at the *Frye–Mack* hearing, Schneider still has not shown a reasonable probability that the outcome at trial would have been different. Schneider fails to acknowledge that the drop of blood found on Sandburg's shoe was not combined with any other drops of blood found at the scene and was tested by the RFLP procedure. We concluded in 1989 that RFLP testing met the *Frye–Mack* standard. *See Schwartz*, 447 N.W.2d at 428. Thus, to show that the RFLP evidence was inadmissible, Schneider must establish that it was not collected in accordance with appropriate standards and controls. *See State v. Traylor*, 656 N.W.2d 885, 891 (Minn.2003). On direct appeal, we rejected this claim. *Schneider*, 597 N.W.2d at 894 ("The defense offered no evidence of any specific violation of the BCA's written protocol or of the Technical Working

Group on DNA Analysis Methods * * *."). Schneider has not provided with his petition any expert opinion that the district court likely would have excluded the RFLP evidence because it failed the second prong of the *Frye–Mack* test. *Cf. State v. Rhodes*, 627 N.W.2d 74, 88 (2001) (concluding that the affidavits of two expert defense lawyers raised "material questions" and an evidentiary hearing was necessary to determine whether trial counsel's advocacy was unreasonable). We therefore conclude that the RFLP evidence would have been admissible, there would have been DNA evidence tying Schneider to the scene, and there is no reasonable probability that the outcome at trial would have been different.

■■■ Schneider may be correct that a pretrial hearing on the admissibility of the DNA evidence is typical in these types of cases. *See Schwartz*, 447 N.W.2d at 428. But even though Schneider did not challenge the DNA evidence in a *Frye–Mack* hearing, he had the opportunity to raise his challenges at trial. The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants get a fair trial. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In this case, even if Schneider did not have a *Frye–Mack* hearing, he had a fair opportunity to raise his concerns about the DNA evidence at trial. Thus, we conclude that he was not denied effective assistance of trial counsel, and his ineffective assistance of appellate counsel fails to the extent that it was based on his appellate counsel's failure

---

**3.** To the extent that Schneider argues that the district court judge should have conducted a *Frye–Mack* hearing on its own initiative, we hold that this issue is *Knaffla*-barred because it could have been raised on direct appeal. But even if the issue was not *Knaffla*-barred,

we would conclude that any error in the district court judge not sua sponte ordering a *Frye–Mack* hearing was not plain error since, as noted, the decision of trial counsel to forgo a *Frye–Mack* hearing was a permissible strategic and tactical decision.

to raise an ineffective assistance of trial counsel claim.

Additionally, we note that Schneider's appellate counsel did not have a duty to include all possible claims on direct appeal, but rather was permitted to argue only the most meritorious claims. *King v. State,* 562 N.W.2d 791, 796–97 (Minn.1997). As our decision on direct appeal and our discussion above indicates, we believe Schneider's appellate counsel could have legitimately concluded that he would not have prevailed in a challenge to the admissibility of the DNA evidence. We therefore hold that Schneider was not denied effective assistance of appellate counsel.

### III.

■■■■ Schneider next claims that trial counsel was ineffective by failing to request removal of the trial judge, who had earlier presided over Schneider's marital dissolution case. This claim is *Knaffla*-barred because it could have been raised on direct appeal. We decline to review the claim now under the *Knaffla* interests-of-justice exception.[4]

■■■ Schneider also claims that the trial judge should have recused himself from hearing the postconviction petition.[5] This claim is not barred by *Knaffla* since it could not have been raised on direct appeal or in Schneider's postconviction petition.

Schneider's argument is essentially the same as his argument that his trial counsel should have requested that the trial judge recuse himself (and his argument that the trial judge should have recused himself, on his own initiative, from the trial). Schneider suggests that the trial judge's impartiality might have been questioned because he presided over a "key portion" of his dissolution proceedings,[6] the omnibus hearing, the jury trial, and the postconviction proceedings. Schneider further argues that "[i]t was improper at best for the trial judge, who was previously the judge presiding over the dissolution proceedings to proceed to rule on the appellant's postconviction petition that concerned the court's potential bias and partiality."

The record in this case does not include any indication that the trial judge was biased. Schneider cites no support for his contention that serving as the judge in a "key portion" of his marital dissolution case would create the appearance of impropriety or judicial bias in a murder trial or postconviction proceedings after the trial. *Cf. Greer v. State,* 673 N.W.2d 151, 157 (Minn.2004) (holding that prior adverse rulings do not establish bias). We therefore hold that the postconviction court judge did not abuse his discretion in failing to recuse himself from the postconviction proceedings.

4. Schneider again argues that "the trial attorney failed to communicate with his client that he had the ability to remove the trial judge," and thus an evidentiary hearing is required to inquire into Schneider's communications with trial counsel. This argument fails for the same reason as the argument with respect to trial counsel's waiver of the *Frye–Mack* hearing. Whether to request removal of a trial judge is not the type of decision that an attorney must allow his client to make.

5. In addition, Schneider claims that the trial judge should have recused himself from the

trial because he was assigned as the judge in the marital dissolution proceedings. We do not address this argument because Schneider failed to raise it in his postconviction petition. *See Azure v. State,* 700 N.W.2d 443, 447 (Minn.2005).

6. The record suggests there was only one hearing in the dissolution case, where the district court continued the matter until June 19, 1997. There were no further proceedings because Sandburg was murdered on June 13, 1997.

## IV.

 Schneider's final claim is that newly discovered evidence requires that he be given a new trial. This claim is not *Knaffla*-barred if the evidence was not available at the time of his direct appeal. To obtain a new trial based on newly discovered evidence, Schneider must establish that (1) the newly discovered evidence was not within his or his counsel's knowledge before trial; (2) the evidence could not have been discovered through due diligence before trial; (3) it is not cumulative, impeaching, or doubtful evidence; and (4) the evidence is likely to produce a different or more favorable result at trial. *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn.2006).

Schneider claims that his stepson, Jon Sandburg, "lied on the stand, committed perjury and his recent drug overdose and death are convincing evidence of his guilt-producing grief regarding his mother's death." Schneider also claims that "e-mails exist that would provide an impartial postconviction court further evidence of his stepson's perjury at trial." Yet Schneider has produced no evidence to support the allegation of perjury nor of the existence of emails. Nor has he indicated why evidence of the alleged perjury was previously undiscoverable. Furthermore, the death of Jon Sandburg is at best inconclusive, and more likely immaterial, to the issues in this case. Thus, these claims are doubtful, and they do not entitle Schneider to any postconviction relief. *See, e.g., Hooper v. State*, 680 N.W.2d 89, 98 (Minn. 2004).

 Schneider also argues that his wife's life insurance policies were "inaccurately depicted at trial and should be fully clarified in an evidentiary hearing allowing appellant to make his case that he did not commit this murder." Schneider does not identify the new evidence that he claims supports this claim. He has made no ar-gument indicating why the evidence was previously undiscoverable. Thus, Schneider's claims fail the test set forth in *Cuypers*, and we conclude that Schneider is not entitled to a postconviction hearing.

We hold that the postconviction court did not abuse its discretion in denying Schneider's petition for postconviction relief without a hearing.

Affirmed.