Pierre LaMont LEAKE, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A06–1357.

Supreme Court of Minnesota.

Aug. 16, 2007.

Rehearing Denied Sept. 13, 2007.

Pierre LaMont Leake, Stillwater, MN, pro se.

Lori Swanson, Attorney General, St. Paul, MN, Michael O. Freeman, Hennepin County Attorney, Minneapolis, MN, for Respondent.

## OPINION

PAGE, Justice.

Appellant Pierre LaMont Leake appeals from the district court's denial of his petition for postconviction relief without an evidentiary hearing. Leake was convicted of first-degree premeditated murder for the 2003 stabbing death of Megan Fisher and was sentenced to life in prison without the possibility of release. *State v. Leake*, 699 N.W.2d 312, 315 (Minn.2005). We affirmed Leake's conviction and sentence on direct appeal. *Id.*[1] We held: (1) that the evidence with respect to premeditation was sufficient, *id.* at 321; (2) that Leake's admission that he used force in commission of a prior offense supported application of the heinous crime statute mandating a sentence of life in prison without the possibility of release, *id.* at 324–25; (3) that jury verdicts of guilty as to first-degree murder but not guilty as to second-degree murder were logically but not legally inconsistent, *id.* at 326; (4) that purported prosecutorial misconduct during closing argument did not satisfy the plain error test, *id.* at 326–28; and (5) that Leake failed to demonstrate that the indictment should be overturned, *id.* at 328. Accordingly, we affirmed Leake's conviction and the sentence of life in prison without the possibility of release. *Id.* at 315.

Leake subsequently filed a pro se petition for postconviction relief seeking an evidentiary hearing, a new trial, vacation of his sentence, and other relief. In the petition, he asserted that: (1) the trial court judge made an improper ex parte communication to the jury; (2) the trial court's ruling on the applicability of the spousal communication privilege was erroneous; (3) the trial judge was biased against him; (4) the jury instructions were confusing or inaccurate; (5) the presentence investigation contained inaccuracies; and (6) he was denied effective assistance of trial and appellate counsel. The postconviction court denied the petition without holding an evidentiary hearing. In denying the petition, the court found that Leake failed to allege facts demonstrating that the performance of his appellate counsel was objectively unreasonable and failed to show that the outcome of his direct appeal would have been different but for the alleged errors of his appellate counsel. The court also found that a number of Leake's claims, although they were known or should have been known at the time of his direct appeal, were not raised at that time and were therefore barred by the rule set out in this court's decision in *State*

---

1. The facts underlying Leake's conviction can be found in the court's decision on direct appeal and will not be repeated here unless necessary for resolution of the issues presented in this appeal.

*v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737 (1976). This appeal followed. The state did not file a brief opposing Leake's appeal. With the exception of one issue, we affirm the postconviction court's denial of review. Because we cannot, on the record presented, determine whether Leake was denied effective assistance of counsel in connection with advice he received from his trial counsel about the consequences of rejecting a plea offer, we remand to the postconviction court for an evidentiary hearing on that issue.

■■■ When reviewing a postconviction court's decisions, we examine only whether the postconviction court's findings are supported by sufficient evidence. *Russell v. State,* 562 N.W.2d 670, 672 (Minn.1997). We will reverse a decision of a postconviction court only if that court abused its discretion. *Id.* However, we review issues of law de novo. *Schleicher v. State,* 718 N.W.2d 440, 445 (Minn.2006). Postconviction courts are required to hold an evidentiary hearing and make findings of fact and conclusions of law "[u]nless the petition and the files and records of the proceedings conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2006). Allegations in a postconviction petition must be "more than argumentative assertions without factual support," *Hodgson v. State,* 540 N.W.2d 515, 517 (Minn.1995), and an evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him or her to the relief requested. *Fratzke v. State,* 450 N.W.2d 101, 102 (Minn.1990).

■■■ Once a direct appeal has been taken, all claims raised in that appeal, all claims known at the time of that appeal, and all claims that should have been known at the time of that appeal will not be considered in a subsequent petition for postconviction relief. *Black v. State,* 560 N.W.2d 83, 85 (Minn.1997); *Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741. But there are two exceptions to this *"Knaffla* rule." First, if a claim is known to a defendant at the time of direct appeal but is not raised, it will not be barred by the rule if the claim's novelty was so great that its legal basis was not reasonably available when direct appeal was taken. *Roby v. State,* 531 N.W.2d 482, 484 (Minn.1995). Second, even if the claim's legal basis was sufficiently available, substantive review may be allowed "when fairness so requires and when the petitioner did not 'deliberately and inexcusably' fail to raise the issue on direct appeal." *Russell,* 562 N.W.2d at 672 (quoting *Roby,* 531 N.W.2d at 484). Leake does not contend that either of these exceptions apply to any of the claims in his petition.[2]

■■■ When a claim of ineffective assistance of trial counsel can be adjudicated on the basis of the trial record, it must be brought on direct appeal or it is barred by the *Knaffla* rule if raised in a postconviction petition. *Torres v. State,* 688 N.W.2d 569, 572 (Minn.2004). But a claim of ineffective assistance of trial counsel that cannot be resolved on the trial court record alone need not be brought in a direct appeal and may be brought in a postcon-

---

**2.** Leake, citing *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), argues that the *Knaffla* rule is unconstitutional. *Massaro* addresses only the appropriate time to bring an ineffective assistance of counsel claim. *See Massaro,* 538 U.S. at 503, 123 S.Ct. 1690. *Massaro* applies only to the federal courts and we have, in the past, declined to follow its holding. *Torres v. State,* 688 N.W.2d 569, 572 (Minn.2004) ("Because the ruling in *Massaro* is based on the Supreme Court's supervisory power over federal courts and is not constitutional in nature, it does not bind us and we decline to adopt it."). Therefore, Leake is entitled to no relief based on *Massaro.*

viction petition. *Id.* Claims of ineffective assistance of appellate counsel on direct appeal are not barred by the *Knaffla* rule in a first postconviction appeal because they could not have been brought at any earlier time. *See Schneider v. State,* 725 N.W.2d 516, 521 (Minn.2007).

To receive an evidentiary hearing on an ineffective assistance of counsel claim, a petitioner must allege facts that would "affirmatively show that his attorney's representation fell below an objective standard of reasonableness, and that but for the errors, the result would have been different." *Wilson v. State,* 582 N.W.2d 882, 885 (Minn.1998); *see also Strickland v. Washington,* 466 U.S. 668, 690–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is substandard when the attorney does not exercise "the customary skills and diligence that a reasonably competent attorney would [exercise] under the circumstances." *State v. Doppler,* 590 N.W.2d 627, 633 (Minn.1999) (quotation marks and citation omitted). Matters of trial strategy lie within the discretion of trial counsel and will not be second-guessed by appellate courts. *See id.* Appellate counsel need not raise all possible claims on direct appeal, and a claim need not be raised if "appellate counsel could have legitimately concluded that [it] would not [prevail]." *See Schneider,* 725 N.W.2d at 523.

I.

First, we address Leake's argument that the judge at his trial engaged in improper ex parte communication with the jury entitling him to a new trial. He also contends that his trial counsel was ineffective for not addressing the issue at the time it arose and that his appellate counsel was ineffective for failing to raise the issue on direct appeal. Because the trial judge's contacts with the jury are evident from the trial record, Leake either knew or should have known of this issue at the time of his direct appeal. Having failed to raise the issue on direct appeal, the issue is barred under the *Knaffla* rule. The same is true for his claim of ineffective assistance of trial counsel related to this issue. *See Black,* 560 N.W.2d at 85. Leake's ineffective assistance of appellate counsel claim, however, is not barred because the claim could not have been brought on direct appeal. *See Schneider,* 725 N.W.2d at 521. The claim nonetheless fails because Leake cannot show that his appellate counsel's performance fell below an objective standard of reasonableness in that his appellate counsel could have legitimately concluded that the claim would not prevail.

During jury deliberations, while out of the presence of the jury, the judge stated the following:

We have another note from the jury. "Do we give a verdict on both counts? For instance, can the defendant be found guilty on both counts?"

* * * *

The Rules are pretty adamant on saying any communication to the jury should be in the courtroom in the presence of the defendant. I violated that when I sent this other note back because I thought it was just a housekeeping thing. They had four forms and they had signed one.

Immediately thereafter, the jury was brought into the courtroom, and the judge stated:

Members of the jury, I have a note here. It's not signed. I assume it's from one of the jurors, probably the foreperson.

Earlier there was a note asking—I don't have it in front of me here but it asked whether it was sufficient to sign one verdict form. I sent a note back with the deputy saying two.

Now I have the following note. "Do we give a verdict on both counts? For instance, can the defendant be found guilty of both counts?"

\* \* \* \*

The answer is as follows: Yes, as to the first question, do we give a verdict on both counts? The answer is yes, if you can, according to the instructions I gave you.

Second question, can the defendant be found guilty, the answer to that is the defendant may be found either not guilty or guilty of either or both counts.

No party objected on the record or asked for any clarification.

■■■ A criminal defendant has a right to be present at every stage of the trial. *State v. Martin,* 723 N.W.2d 613, 619 (Minn.2006); *see also* Minn. R.Crim. P. 26.03, subd. 1(1). Responding to a deliberating jury's question is a stage of the trial, requiring the defendant's presence. *State v. Sessions,* 621 N.W.2d 751, 755 (Minn. 2001). In addition, Minn. R.Crim. P. 26.03, subd. 19(2) and (3), provide that when a jury asks to review testimony or other evidence or "desires to be informed on any point of law, the jurors, after notice to the prosecutor and defense counsel, shall be conducted to the courtroom," at which time the jury's requests may be addressed.

■■■ Communication between a judge and a jury on a substantive matter without the defendant's presence or consent may be reversible error. *Martin,* 723 N.W.2d at 619. Reversal is not automatic, however, and prejudice will not be presumed simply because the proceedings contained a defect. *State v. Dame,* 670 N.W.2d 261, 266 (Minn.2003). In *State v. Erickson,* a case in which we addressed "private communications or contact" with deliberating jurors, we indicated that "a new trial will

be ordered only upon a showing of prejudice by the appellant." 597 N.W.2d 897, 901 (Minn.1999). We further indicated that prejudice would be presumed if the defendant produces evidence "showing \* \* \* private communication or contact or other circumstances suggesting direct or indirect improper influence or jury tampering." *Id.* at 902. If a presumption of prejudice arises, the appellant is entitled to relief unless the state rebuts that presumption. *Martin,* 723 N.W.2d at 624. In considering whether the presumption of prejudice has been rebutted, we consider the circumstances surrounding the communication and the substance of the communication.

■■■ The facts of this case indicate that the trial court improperly responded to a question contained in a note from the jury without Leake being present. Because responding to a deliberating jury's question is a stage of trial, the court's contact with the jury was error. Given the circumstances surrounding the communication and the communication's substance, we nonetheless conclude that the communication does not suggest improper influence or jury tampering. Nor does the record suggest that Leake was prejudiced by the communication. According to the record, the note in question asked whether it was sufficient for the jury to sign one verdict form. In response, the court "sent a note back with the deputy saying two."

While the procedure used by the trial court to answer the jury question was improper, there is no allegation, much less any evidence, indicating that the trial court entered the jury room or otherwise contacted the jury personally. Further, the court's written response to the jury's question was neutral and there is no allegation that the answer was in any way incorrect or misleading. Moreover, any possible prejudice from the procedure used was

mitigated when the court, on the record in open court with Leake present, clarified his answer to the jury's first question. On that basis, we therefore conclude that, had the claim been raised on direct appeal, it would not have prevailed. Because the claim would not have prevailed on direct appeal, Leake's appellate counsel was not ineffective in not raising it at that time. Leake is entitled to no relief on this claim.

## II.

Next, we address Leake's argument that the trial court erred when it concluded that the spousal communication privilege was not applicable to certain testimony by Leake's ex-wife. Leake also contends that his trial counsel was ineffective for failing to argue this issue adequately to the trial court, that his appellate counsel was ineffective for failing to raise this issue on direct appeal, and that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim related to this issue. Because we conclude that the issue related to the trial court's purported erroneous ruling and any inadequacies in trial representation were either known or should have been known to Leake at the time of his direct appeal, those issues are barred under the *Knaffla* rule. *See Black*, 560 N.W.2d at 85. As noted above, Leake's ineffective assistance of appellate counsel claims are not barred. *See Schneider*, 725 N.W.2d at 521. They nonetheless fail.

Leake was married to Kathy Deutschlander at the time of the murder. The state called Deutschlander as a witness. Before she testified, Leake requested that she be precluded from testifying to any statements made by Leake to Deutschlander during marriage on the grounds that they were subject to the spousal communication privilege. The state agreed that such statements should be excluded but contended that certain statements by Leake on the morning of the crime were not protected by the privilege.

The trial court heard offers of proof from both sides. The state asserted Deutschlander overheard Leake make certain statements to himself that were not directed at Deutschlander. Leake asserted that the statements in question were made to Deutschlander. Based on these offers of proof, the court found that Leake's statements "were not communications to the spouse * * * but in effect [were] overheard remarks by one spouse which turned out to be in the presence of the other," and permitted Deutschlander to testify regarding those statements. Deutschlander then testified that she overheard Leake, in the hours after the murder, talking to himself as if reciting a to-do list while placing clothes and towels in a bag.

"The availability of a privilege is an evidentiary ruling to be determined by the trial court and reviewed on appeal for an abuse of discretion." *State v. Palubicki*, 700 N.W.2d 476, 482 (Minn.2005). Minnesota Statutes 595.02, subd. 1(a) (2006), provides that a husband or wife cannot "during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage." In this context, "communication" has been held to mean "all written or spoken words, acts, and gestures which were intended by one spouse to convey a meaning or message to the other." *Palubicki*, 700 N.W.2d at 483. The party invoking this privilege bears the burden of proving its applicability. *Id.*

Having carefully reviewed the record, we conclude that the trial court did not abuse its discretion when it found that Leake's statements, which were overheard

by Deutschlander, "were not communications to the spouse." Therefore, the trial court did not err when it permitted Deutschlander's testimony regarding those statements. Because there was no error in admitting Deutschlander's testimony regarding Leake's statements, Leake's ineffective assistance of appellate counsel claims necessarily fail. *See Roby v. State*, 547 N.W.2d 354, 356–57 (Minn.1996) (noting that a defendant must be prejudiced by his appellate counsel's failure to raise a claim).

### III.

Leake also argues that the trial court judge was biased against him, that the presentence investigation contained inaccuracies, and that the court's instructions were prejudicial, confusing, and misleading. Because we conclude that each of these claims was either known or should have been known to Leake at the time of his direct appeal, we further conclude that they are barred under the *Knaffla* rule. *See Black*, 560 N.W.2d at 85.

### IV.

Leake further contends that he was denied effective assistance of trial counsel by his counsel's failure to call a known alibi witness to testify. In addition, he argues that his appellate counsel was ineffective for failing to raise this ineffective assistance of trial counsel claim in his direct appeal. Both of these ineffective assistance of counsel claims fail.

 Decisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy that lie within the discretion of trial counsel. *State v. Jones*, 392 N.W.2d 224, 236 (Minn.1986). Given our reluctance to second-guess trial counsel's strategic decisions, we are satisfied, based on the record before us, that trial counsel's

representation with respect to this alleged alibi witness did not fall below an objective standard of reasonableness. Because Leake's claim against his trial counsel fails, so too does his claim against his appellate counsel. Therefore, the postconviction court did not abuse its discretion in dismissing these claims without an evidentiary hearing.

### V.

 During trial, the state offered to recommend that Leake be sentenced to life imprisonment with the possibility of release after 30 years plus any time he would be required to serve for a probation violation related to a 1998 conviction in exchange for a plea of guilty by Leake. The offer was placed on the record. During the on-the-record discussions of the state's plea offer, both Leake's trial counsel and the trial court told Leake that, should he be convicted of first-degree murder as charged, he would face a potential sentence of life with the possibility of release after 30 years plus an additional consecutive sentence for an unrelated probation violation. Leake rejected the offer and was ultimately sentenced, contrary to what he was told by his trial counsel and the trial court, to life in prison without the possibility of release pursuant to Minn. Stat. § 609.106 (2002), the state's heinous crimes statute. Leake now claims that, during the plea discussions, his counsel misled him into believing that under the worst-case scenario, if convicted, he would be eligible for release after 30 years plus the consecutive sentence related to the probation violation. Leake contends that his trial counsel's failure to accurately advise him about the consequences he faced when rejecting the state's plea offer constitutes ineffective assistance of trial counsel. As with his other ineffective assistance of counsel claims, we read Leake's petition

and the arguments in his brief to this court to claim that his appellate counsel was ineffective in failing to raise this ineffective assistance of trial counsel claim on direct appeal.[3] While it is clear from the record that Leake either knew or should have known of the ineffective assistance of trial counsel claim at the time of his direct appeal, we must nonetheless determine whether Leake's trial counsel's performance was ineffective in order to resolve the ineffective assistance of appellate counsel claim.

Although we have held that a defendant may bring an ineffective assistance of counsel claim if he was induced to enter a guilty plea by the objectively unreasonable advice of his attorney, see State v. Ecker, 524 N.W.2d 712, 718 (Minn.1994), we have not had occasion to consider whether a defendant who rejects an offer by the state to plead guilty in reliance on incorrect advice from defense counsel implicates the defendant's right to effective assistance of counsel under the Sixth Amendment to the U.S. Constitution. But see State v. Powell, 578 N.W.2d 727, 731–33 (Minn.1998) (indicating in dicta that, were an attorney to fail to communicate a plea offer to his client, the standard ineffective assistance analysis would apply); State v. Ray, 273

N.W.2d 652, 655–56 (Minn.1978) (holding that if defense counsel improperly caused the defendant to reject a plea deal, the defendant may be entitled to relief).

Courts from other jurisdictions, however, have held that the Sixth Amendment right to effective assistance of counsel is implicated by the decision to reject a plea bargain. See, e.g., In re Alvernaz, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 753–55 (1992); People v. Curry, 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 882 (1997); Williams v. State, 326 Md. 367, 605 A.2d 103, 106–08 (1992). Generally, these courts have held that an attorney's advice falls below objectively reasonable standards, thereby constituting ineffective assistance, when the attorney's inaccurate or misleading factual statements tend to affect a defendant's decision to reject a plea bargain and proceed to trial. See, e.g., Alvernaz, 8 Cal.Rptr.2d 713, 830 P.2d at 753–55 (noting agreement among "all federal and state courts presented with this issue"); Curry, 227 Ill.Dec. 395, 687 N.E.2d at 887; Williams, 605 A.2d at 108. These courts also indicate that a defendant is prejudiced by such ineffective assistance if there is a reasonable likelihood the plea bargain would have been accepted had the defendant been properly advised. See,

---

3. The dissent expresses concern that Leake does not properly raise this ineffective assistance of appellate counsel claim. Here, however, Leake filed his petition without the aid of an attorney, and in the past we have indicated that it may be appropriate to read the pleadings of pro se appellants with an understanding eye. See, e.g., Payne v. Erickson, 404 N.W.2d 277, 279 (Minn.1987); Thomale v. State, 261 N.W.2d 353, 353 (Minn.1977); cf. Minn.Stat. § 590.03 (2006) ("The court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form."). Moreover, in his petition Leake specifically identifies the factual circumstances giving rise to this claim and asserts that he believes his trial counsel's perform-

ance was deficient. The petition also alleges that his "[a]ppellate counsel's failure to raise 'ineffective assistance of counsel' claim on trial counsel, constituted conduct that was not 'reasonable professional behavior'." In addition, Leake asserts in his petition that, had he been properly informed, "there is a reasonable probability that [Leake] would not have proceeded with trial and accepted [the plea] offer." While Leake does not specifically identify the objective standards of reasonableness applicable to his trial and appellate attorneys, it is obvious he believes that he was entitled to accurate information in the course of considering the state's plea offer. Accordingly, we are satisfied that Leake has adequately raised this claim.

*e.g., Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 756; *Curry,* 227 Ill.Dec. 395, 687 N.E.2d at 888. *But see Williams,* 605 A.2d at 110 (using "substantial probability" test). We see no reason to reject the approach these courts have taken.

Here, count I of the indictment read, in relevant part:

MURDER IN THE FIRST DEGREE (FELONY)

MINN. STAT. 2002 § 609.185(a)(1); § 609.11; § 609.106, SUBD. 2(2)

PENALTY: LIFE

Minnesota Statutes § 609.106, subd. 2(2),[4] requires that a defendant be sentenced to life in prison without the possibility of release under certain circumstances. Thus, given count I of the indictment, defense counsel should have been on notice that Leake faced the possibility of being sentenced to life in prison without the possibility of release. Yet, in discussing the state's plea offer with Leake on the record, defense counsel did not advise Leake that he faced a sentence of life in prison without the possibility of release. In the absence of facts in the record indicating that Leake was aware that he faced a sentence of life in prison without the possibility of release at the time he declined the state's plea offer, we cannot say with any certainty that Leake's defense counsel's performance did not fall below an objective standard of reasonableness or that Leake's decision to decline the state's plea offer was unaffected by his defense counsel's performance. Accordingly, we cannot say with any certainty that Leake's appellate counsel could have legitimately

concluded that an ineffective assistance of trial counsel claim had no reasonable likelihood of succeeding. Therefore, we remand to the postconviction court to hold a hearing for the purpose of determining whether Leake's appellate counsel provided ineffective assistance when appellate counsel failed to bring this ineffective assistance of trial counsel claim. As part of this hearing, it will likely be necessary to determine whether trial counsel's failure to advise Leake at the time of the plea offer that he faced a sentence of life in prison without the possibility of release constituted ineffective assistance of trial counsel and, if it did, whether there is a reasonable likelihood that Leake would have accepted the state's plea offer had he been properly advised. *Cf. Ray,* 273 N.W.2d at 655–56 (stating that postconviction proceedings should examine whether defense counsel's conflict of interest improperly caused the defendant to reject a plea offer).

In the interest of judicial economy, we believe it is prudent to provide some guidance to the postconviction court should it determine that Leake's claim has merit. Leake does not specifically identify the relief he believes would be appropriate in the event that he prevails on this ineffective assistance of counsel claim. A number of courts that have addressed the issue have concluded that a new trial is the appropriate remedy. *See, e.g., Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 760; *Commonwealth v. Napper,* 254 Pa.Super. 54, 385 A.2d 521, 524 (1978). But some courts have concluded that the remedy of a new trial is not well tailored to the harm done

---

4. The indictment referenced Minn.Stat. § 609.106, subd. 2(2), which mandates a life sentence without release for a person convicted of committing first-degree murder in the course of a kidnapping. Leake, however, was charged with and ultimately convicted of first-degree premeditated murder. Thus, subdivision 2(3) of section 609.106, mandating life

imprisonment without release for individuals convicted of first-degree premeditated murder who had been previously convicted of a heinous crime, is the applicable provision. Despite the minor error in the statute cited in the indictment, it should have been clear to Leake's trial counsel that a sentence of life without release was possible.

by the constitutional violation and have, in effect, allowed the defendant to specifically enforce the plea offer. *See, e.g., Williams,* 605 A.2d at 110–11 (holding that the appropriate remedy is to allow the defendant to now accept the plea offer). Still other courts have rejected specific enforcement of the plea offer because the state, after having gone through the first trial, may no longer wish to make that offer, and because the trial court should not be bound to accept the plea under the terms of the offer. *See, e.g., Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 758–60. One court has solved this dilemma by remanding for a new trial but recognizing that the plea bargaining process can begin anew, at the state's option. *Curry,* 227 Ill.Dec. 395, 687 N.E.2d at 890–91.

On the unique circumstances of this case, we hold that if the postconviction court determines that Leake is entitled to relief on this ineffective assistance of appellate counsel claim, Leake may accept the original plea agreement offered by the state and be resentenced in accord with its terms. If, however, the state, based on valid reasons, objects to specific performance of the original plea offer or the district court, having finally had an opportunity to consider the plea agreement and the plea, rejects the plea, Leake shall be entitled to withdraw his plea and receive a new trial.

## VI.

We next address Leake's contention that he was denied effective assistance of trial counsel by his counsel's failure to conduct an adequate pre-sentence investigation and pursue a diminished capacity defense, as Leake claims it would have reduced his liability from first-degree murder to second-degree murder. This claim has no merit. It is clear from our case law that Minnesota does not recognize a dimin-

ished capacity as a defense. *See Cuypers v. State,* 711 N.W.2d 100, 105 (Minn.2006). Therefore, defense counsel's failure to raise a diminished capacity defense did not constitute ineffective assistance of counsel. For the same reason, Leake's appellate counsel was not ineffective.

## VII.

Next, Leake argues that he was denied effective assistance of trial counsel by his counsel's failure to object to certain hearsay testimony despite the judge's observation that "extensive hearsay of very questionable admissibility" had been elicited. He further argues that his appellate counsel was ineffective for failing to raise this ineffective assistance of trial counsel claim in his direct appeal. Because Leake should have known of this ineffective assistance of trial counsel claim on direct appeal, it is barred by the *Knaffla* rule. *See Black,* 560 N.W.2d at 85. Leake's ineffective assistance of appellate counsel claim, while not barred under *Knaffla, v. see Schneider,* 725 N.W.2d at 521, fails on the merits.

Decisions about objections at trial are matters of trial strategy. *White v. State,* 711 N.W.2d 106, 110 (Minn.2006). As pointed out by the trial court,

> there may [have been] no other way to get in the fact that the victim is selling drugs * * *. I think tactically, if I were defense counsel, I'd want to get into that and I'd realize that if I did I might have to do it through hearsay but it would open the door to hearsay for the State.

Thus, there were sound strategic reasons for Leake's counsel not to object to the admission of the hearsay. Because we conclude that trial counsel's failure to object to the hearsay testimony involved trial strategy, we also conclude that appellate counsel's failure to raise this issue on di-

rect appeal did not constitute ineffective assistance of counsel.

## VIII.

Leake contends that he was denied effective assistance of appellate counsel by his counsel's failure to help Leake get a time extension to file a pro se brief or to inform Leake that he could file a motion for rehearing. Like Leake's preceding claim, this claim has no merit. First, Leake had the opportunity to and in fact did file a pro se supplementary brief on direct appeal. And the record reflects that Leake had 30 days after receipt of his trial transcripts to complete his brief. Leake does not explain why he could not have included the ex parte communication claim in that brief or how he was prejudiced by counsel's failure to inform him that he could move for a rehearing. Thus, these ineffective assistance of appellate counsel claims are nothing more than an argumentative assertion without factual support. Moreover, having already concluded that Leake is not entitled to any relief on his ex parte communication claim, this ineffective assistance of appellate counsel claim necessarily fails.

## IX.

Finally, we address Leake's contention that he was denied effective assistance of appellate counsel by his appellate counsel's failure to claim on direct appeal that the prosecutor failed to disclose exculpatory information regarding assurances made by the police to one of the state's witnesses. Minnesota Rule of Criminal Procedure 9.01, subdivision 1(6), provides that "[t]he prosecuting attorney shall disclose to defense counsel any material or information within the prosecuting attorney's possession and control that tends to negate or reduce the guilt of the accused as to the offense charged." *See also Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). With respect to this claim, the record reflects that the prosecutor sent defense counsel an e-mail several months before Leake's trial that indicated that the police had made certain assurances to the witness in question. Thus, the information having been disclosed and there being no violation of Rule 9.01, subdivision 1(6), the claim has no merit.

Affirmed in part, reversed in part, and remanded to the postconviction court for an evidentiary hearing.

HANSON, Justice (dissenting).

I respectfully dissent. I would affirm the district court's denial of Leake's postconviction petition on all grounds, including the claim of ineffective assistance of appellate counsel. As to the latter, I would (1) reframe the issue as being whether appellate counsel was ineffective in failing to argue on direct appeal that trial counsel was ineffective in advising Leake on the plea offer; and (2) determine that Leake has not alleged sufficient facts to show that appellate counsel's representation fell below an objective standard of reasonableness.

### A. Framing the Issue of Ineffective Assistance of Appellate Counsel.

Because any claim of the ineffective assistance of trial counsel regarding the plea offer could have been adjudicated on the basis of the trial record, it is *Knaffla* barred and cannot be brought as a direct claim by postconviction petition. Such a claim can only survive in a postconviction proceeding as an indirect claim encompassed within Leake's claim of ineffective assistance of appellate counsel. This means that the issue raised by Leake's postconviction petition is whether appellate counsel's failure to argue on direct appeal the ineffective assistance of trial counsel

regarding the plea offer fell below an objective standard of reasonableness.

Although that issue includes the underlying question of whether trial counsel was ineffective in advising Leake on the plea offer, the answer to that underlying question does not necessarily end the inquiry because appellate counsel may have had legitimate reasons of appellate strategy to not argue that underlying question. For example, appellate counsel on direct appeal sought to obtain a judgment of acquittal for insufficient evidence, a new trial for inconsistent verdicts or prosecutorial misconduct, or elimination of the sentencing enhancement factor found by the sentencing court. Appellate counsel did not seek to reinstate the state's plea offer and may have concluded that an effort to do so would weaken the challenges to the conviction.

Further, to substantiate this claim for ineffective assistance of appellate counsel, Leake must show that "the result would have been different." *Wilson v. State,* 582 N.W.2d 882, 885 (Minn.1998). Thus, in addition to showing that appellate counsel was ineffective, Leake must show that:

1. If the issue of the ineffective assistance of trial counsel had been raised on direct appeal, it would have been successful in obtaining a remand.
2. On remand, Leake would be able to show that trial counsel was ineffective in failing to give or in giving incorrect advice on the plea offer and that, if trial counsel had been effective, he would have accepted the offer and entered a plea of guilty.

B. *Did Leake Allege Facts Showing Appellate Counsel's Representation to be Ineffective?*

Leake's postconviction petition does not allege any facts, but only alleges conclusions. The petition does not specifically claim ineffective assistance of appellate counsel and only makes the following vague allegation: "Sentencing court erred when it sentenced petitioner in lieu of attorney-client conflicts and denied effective assistance of counsel."

In a memorandum submitted with the postconviction petition, Leake argued several instances of alleged ineffective assistance of trial counsel concerning the conduct of the trial and, as relevant to the issue here, argued:

Trial counsel's failure to inform the petitioner of all ramifications that attached to rejecting states plea offer, thus taking away petitioners right to choice and make an informed decision. (T.p.209–11). The state offered the petitioner a sentence of "life (30 years) with the possibility of parole" in exchange for a guilty plea of first-degree murder. The state also offered to run the petitioners probation violation concurrent with the sentence, as opposed to consecutive. The trial court stated that if petitioner were found guilty of first-degree murder, he would have no choice but to sentence petitioner to life in prison, plus the probation violation sentence (which only added up to thirty months). Petitioner then was erroneously informed by trial counsel that he had two choices: 1) plead guilty to first-degree murder and be sentenced to life in prison with the possibility of parole, or 2) risk going to trial, being found guilty of first-degree murder and sentenced to life in prison plus the probation violation sentence (thirty months). Trial counsel did not inform petitioner that due to his prior convictions, a sentence of life with out the possibility of parole was available nor ask the state would they even consider this option. If this option would

have been available to the petitioner during plea negotiations, there is a reasonable probability that the petitioner would not have proceeded with trial and accepted offer.

Leake did not allege any facts to identify what the objective standard of reasonableness would be for trial counsel under these facts. He did not present any expert opinion about what that standard would be or that trial counsel's representation fell below it. He did not allege that, if properly advised, he would have accepted the plea offer and entered a plea of guilty.

Further, Leake did not allege that appellate counsel was ineffective for not arguing on direct appeal this aspect of trial counsel's representation. Instead, Leake's only arguments about appellate counsel concerned such counsel's failure to argue a violation of Leake's "right to be present at every stage of trial"; failure to inform Leake of all procedural options regarding the due date for his pro se brief; failure to argue ineffective assistance of trial counsel in connection with the trial judge's alleged ex parte communication with jurors; failure to raise a *Brady* violation and denial of due process claim based on the state's failure to disclose deals made with trial witnesses; and failure to raise arguments regarding Leake's "spousal privilege." Leake did not allege any facts to show what the objective standard of reasonableness would be to judge the effectiveness of appellate counsel's selection of the issues to argue on direct appeal, or that appellate counsel's representation fell below that standard. Likewise, Leake did not present any expert opinion about what that standard would be or that appellate counsel violated the standard.

On this postconviction record, I would conclude that Leake has not alleged sufficient facts to warrant an evidentiary hear-ing on this claim of the ineffective assistance of appellate counsel.

MEYER, Justice (dissenting).

I join in the dissent of Justice Hanson.

GILDEA, Justice (dissenting).

I join in the dissent of Justice Hanson.