STATE of Minnesota, Respondent,

v.

Harold Allan GUSTAFSON, Appellant.

No. C6–84–1890.

Supreme Court of Minnesota.

Dec. 20, 1985.

Steven P. Russett, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., St. Paul, for respondent.

YETKA, Justice.

This is an appeal of a first-degree murder conviction rendered by a Hennepin County District Court jury against defendant Harold Allan Gustafson and codefendant Guy Hathaway. Gustafson makes, for the most part, the same contentions as his codefendant. He argues that the court made erroneous evidentiary rulings, improperly joined him and codefendant Hathaway, denied his right to discover information by protecting certain information under a prosecutor's certificate and that the evidence was insufficient to support the verdict. Gustafson also makes pro se contentions concerning allegedly perjured testimony and allegedly prejudicial remarks made in the state's closing argument. For reasons stated below, we affirm.

The facts concerning the attempted robbery and the killing of Richard Walton at the Mounds Park Hospital pharmacy in St. Paul on October 24, 1982, are found in *State v. Hathaway*, 379 N.W.2d 498 (Minn. 1985). The following facts are added concerning Gustafson's arrest and trial.

Although Gustafson had lived in Minnesota prior to the summer of 1982, he left at that time in violation of his parole and moved to Colorado. He returned to Minnesota on October 18, 1982. The record indicates that he planned to go back to Colorado with his friends, Collen Pillar and Randy Sufflick, on October 24, the day of the Mounds Park burglary. Pillar and Sufflick were still waiting for Gustafson to show up on October 25 when he arrived with Hathaway. Following the Mounds Park burglary, Gustafson and Hathaway lived in Colorado, Kentucky, and Missouri under assumed names before arriving in California in early 1984. On February 11, 1984, the FBI arrested the defendants in California. At that time, the agents seized an envelope that had just arrived containing birth certificates with assumed names for both Gustafson and Hathaway. On February 17, Officer Timothy Erickson of the St. Paul police interviewed Gustafson, who was in custody in California. Gustafson maintained his innocence.

Gustafson's trial proceeded as described in *Hathaway*. After the state rested its case, the defense called a series of witnesses to establish an alibi for Gustafson. Paul Seydel testified that he was riding motorcycles with the defendants throughout the day of October 24. Joseph and Colleen Gustafson, the defendant's brother and sister-in-law, testified that defendant was at home on the evening of October 24 tatooing them and his mother. The testimony of Patricia and James Gustafson, the defendant's parents, was to the same effect. On cross-examination, however, James Gustafson admitted he had never informed the police of this alibi. Patricia Gustafson further testified that Gustafson had been in the Mounds Park Hospital during the week before the robbery attempt because his sister had been hospitalized there. The defense next called Douglas McArthur, who had informed a police undercover agent in a taped confession that he had been the get-away driver during the incident. McArthur attempted to explain that his earlier statement was motivated by his mistaken attempt to impress the undercover agent, who he thought was another criminal. Gustafson decided not to take the stand.

The defense also called Timothy Eling. Already convicted on robbery/murder charges for the Mounds Park incident, Eling testified that it was not Gustafson and Hathaway, but witnesses Dwyer and Leslie who were with him during the commission of the crime. On cross-examination, however, the state brought out that both Dwyer and Leslie had testified against Eling in his trial.

The defense rested its case on August 2, 1984. On August 4, the jury found Gustafson and Hathaway guilty of two counts of first-degree murder and one count of conspiracy to commit aggravated robbery. The court imposed the mandatory life sentence on both defendants on the same day. On September 4, Gustafson moved for a JNOV or, in the alternative, for a new trial. The court denied the motion on October 4, 1984.

As did Hathaway, Gustafson raises the following issues:

1. Whether the district court, pursuant to Minn.R.Crim.P. 17.03, subd. 2(1) improperly joined Hathaway and himself for trial;

2. Whether Minn.R.Crim.P. 9.01, subd. 3(2) violated his right to obtain disclosure of information under *State v. Thompson*, 273 Minn. 1, 139 N.W.2d 490 (1966), and exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1964);

3. Whether the use of photo displays by the police violated his due process rights; and

4. Whether the evidence was sufficient to allow the jury to convict him of

the offense with which he was charged.

For the reasons stated in *Hathaway*, we hold that the district court made no error in joining the defendants for trial or in not suppressing evidence derived from the photo displays. The evidence was sufficient to support the verdict and the prosecutor's certificate did not violate the defendant's constitutional rights.

Gustafson also raises the following issues not addressed in *Hathaway*:

5. Whether he was denied a fair trial and due process by the exclusion of evidence supporting appellant's claim that Dwyer and Leslie committed the crime.

Gustafson argues that the district court erred in excluding evidence that Gustafson believes would implicate witnesses Dwyer and Leslie in the crime and thus establish the defense that the other two gunmen were Dwyer and Leslie, not Gustafson and Hathaway. The excluded evidence consists of Dwyer's 1975 offenses of robbery, Dwyer's pending robbery charges, and Leslie's burglary and robbery charges to which he had entered a plea of nolo contendere. Gustafson maintains that strict rules of admissibility of collateral matters should be relaxed when the evidence tends to support the defense that another party committed the homicide. *See State v. Hawkins*, 260 N.W.2d 150 (Minn.1977). In addition, Gustafson urges that a taped confession of witness Douglas McArthur was admissible as an exception to the hearsay rule under the "catchall" exception of Minn.R. Evid. 803(24) because there were circumstantial guarantees of trustworthiness. He also argues that, in proving ineffective police investigation, the confession was not offered to prove the truth of the matter asserted. McArthur's confession would have aided Gustafson in presenting a defense to the jury. The cumulative effect of these exclusions of evidence was, Gustafson maintains, to deny a fair trial and due process since the excluded evidence would have put a reasonable doubt in the minds of the jury.

The state argues that the evidence concerning Dwyer and Leslie was inadmissible. Gustafson's reliance on *Hawkins* is misplaced, the state maintains, and the court will not allow otherwise inadmissible evidence when no foundation has been laid convincingly linking the witness and the crime. *See State v. O'Dell*, 328 N.W.2d 730 (Minn.1983). The state makes no answer to Gustafson's arguments concerning McArthur's taped confession.

Although Gustafson has challenged the exclusion of evidence as in violation of his constitutional rights, this court reviews questions concerning the admissibility of evidence on an abuse-of-discretion basis. Under the Minnesota Rules of Evidence, the matters Gustafson was seeking to introduce are inadmissible. The 1975 Dwyer offenses were not admissible as impeachment evidence under Minn.R.Evid. 609 because they involved dismissed charges and not convictions. The pending charges against Dwyer and Leslie's nolo contendere plea are also inadmissible under Rules 410 and 609. Gustafson urges that the evidence should have been admitted as substantive evidence going to prove his defense under Minn.R.Evid. 404. In its discretion, however, the trial court found that the evidence did not go to prove a motive, opportunity or plan. Collateral matters were admissible in *Hawkins* since the witness admitted his presence at the scene of the crime, and the witness's testimony was the only way the defendant was convicted. 260 N.W.2d at 158–60. The present situation, however, seems to be more analogous to the *O'Dell* case where the court ruled that collateral matters were not admissible to help structure a defense when no real foundation had been laid linking the witness to the crime. 328 N.W.2d at 731. Here, Dwyer and Leslie deny having been present at the crime and their alibis prevented their being prosecuted. In addition, their testimony was not the sole cause of the defendant's conviction. The defense was given a fair opportunity to impeach the credibility of Dwyer and Leslie by other convictions and prior bad acts. It was not

an abuse of discretion for the district court to rule the evidence inadmissible. Any error could be regarded as harmless beyond any reasonable doubt because defense counsel was able to cross-examine both Dwyer and Leslie on a series of prior convictions and past bad acts, and their testimony laid out for the jury their involvements in the planning stages of the robbery.

■ As to Gustafson's arguments concerning McArthur's taped confession, the district court did allow impeachment by way of the statement. It did not, however, allow the statement in as substantive evidence. Gustafson urges that the statement was admissible under the catchall exception to the hearsay rule. Minn.R.Evid. 803(24). This exception, however, is used only when the circumstantial guarantees of trustworthiness are "particularly reliable." *State v. Ortlepp*, 363 N.W.2d 39 (Minn. 1985). Here, McArthur claims that he made the statements in hope of influencing and impressing a man he thought was a fellow criminal. This is not the type of "particularly reliable" evidence the catchall exception is meant to encompass.

6. Whether Gustafson was denied due process by use of perjured testimony against him.

■ In a pro se brief, Gustafson maintains that he was denied due process by the use of perjured testimony against him. Perjured testimony must be set aside if there is a reasonable likelihood that it affected the jury verdict. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Here, however, there is no showing that perjured testimony was used against Gustafson. Gustafson contends that the inconsistencies in Dwyer's testimony concerning Dwyer's discharge of a gun in a previous offense was perjury. The trial court, however, determined this to be an "inconsistency" and Dwyer was made to explain the situation by the defense counsel on direct examination. There is no showing that this was perjury or that, if perjury, the collateral matter affected the jury verdict. The same analysis applies to Gustafson's charges concerning the testimony of Denise Loftus.

7. Whether the prosecutor's comments in closing argument denied Gustafson fair trial.

Gustafson also urges in a pro se brief that the cumulative effect of comments made by the prosecution in his closing arguments denied appellant a fair trial. We believe the trial court did not err in denying the objection to closing argument and there was, thus, no abuse of its discretion.

The conviction is affirmed.

PETERSON, J., took no part in the consideration or decision of this case.