Harold A. GUSTAFSON, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A07–2370.

Supreme Court of Minnesota.

Aug. 7, 2008.

Harold A. Gustafson, Indian Springs, NV, appellant pro se.

Lori Swanson, Office of Atty. Gen., Susan Gaertner, Ramsey County Atty., Mark Nathan Lystig, Asst. Ramsey County Atty., St. Paul, MN, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

Harold Gustafson was convicted of two counts of first-degree murder for his participation in the 1982 shooting of Saint Paul Police Officer Richard Walton. *State v. Gustafson,* 379 N.W.2d 81, 83 (Minn. 1985). Gustafson filed a direct appeal, and we affirmed his conviction. *Id.* at 85. Gustafson subsequently filed a petition for postconviction relief. *Gustafson v. State,* 477 N.W.2d 709, 713 (Minn.1991). After a hearing, the postconviction court denied relief, and we affirmed. Gustafson then filed a second petition for postconviction relief, which the postconviction court denied without a hearing. Gustafson now appeals the second postconviction court's denial of relief. We affirm.

On Sunday, October 24, 1982, three armed men wearing ski masks attempted to rob the pharmacy at Mounds Park Hospital in Saint Paul.[1] Shortly after the robbers entered the pharmacy, the hospital switchboard operator received a call for help and Richard Walton—an off-duty Saint Paul police officer and hospital security guard—responded to the call. When Walton arrived at the pharmacy, there was an exchange of gunshots between Walton and one of the robbers, during which Walton was wounded in the head. The three robbers then fled the scene without completing the robbery. Twelve hours later, Walton died from the gunshot wound to his head.

Two days later, the police received a tip from a citizen informant that a man named Timothy Eling was connected to Walton's shooting, and that a man named William Dwyer had specific knowledge of the crime. The police subsequently arrested Dwyer. Following his arrest, Dwyer told the police that he and two other men—Guy Hathaway and petitioner Harold Gustafson—planned to rob the hospital pharmacy on October 22, but called off the robbery after arriving at the pharmacy because too many people were present. Dwyer also described the weapons and car used in that aborted robbery attempt.

The next day, October 27, the police arrested Eling and took him to the hospital for treatment of two gunshot wounds to his lower right leg. On November 19, George Leslie contacted the Saint Paul Police Department. Leslie told the police that he was supposed to participate in the robbery of the hospital pharmacy on October 24, with Eling, Hathaway, and Gustafson. Leslie said that he did not participate in the robbery because he changed his mind at the last minute and did not meet the three men at the agreed-upon time.

Eling was subsequently indicted for the first-degree murder of Walton, found guilty, convicted, and sentenced to life in prison. We affirmed his conviction on direct appeal. *State v. Eling,* 355 N.W.2d 286, 295 (Minn.1984). Hathaway and Gustafson fled the state, but they were arrested by FBI agents in California nearly 2 years after the murder. Both men were charged with first-degree murder, felony murder, and conspiracy to commit aggravated robbery. The State moved for a joint trial of Hathaway and Gustafson, and the district court granted the motion.

At Gustafson and Hathaway's trial, Leslie and Dwyer testified for the State. Dwyer testified that he, Eling, Hathaway, and Gustafson had a friend purchase a car to use in the robbery. He went on to describe the October 22 aborted robbery attempt. Dwyer also testified that he and a friend—Johnny Johnson—were in Wisconsin on October 24, the day of the robbery/murder. According to Dwyer, he and Johnson went to a prison in Wisconsin around 1:00 p.m. or 2:00 p.m. that day to visit a friend of Johnson's. After about an hour at the prison, the two men drove to Mel's Midtowner Bar in River Falls, Wisconsin. Dwyer testified that he and Johnson drank at Mel's bar and a bar across the street until 11:00 p.m. or 11:30 p.m. that night.

Leslie testified that on the day of the robbery/murder, he, Eling, Hathaway, and Gustafson discussed how they were going to rob the pharmacy. According to Leslie, the four men planned to meet at 7:00 p.m. to carry out the robbery. But Leslie testi-

---

1. A more detailed version of the facts can be found in this court's opinions in *Gustafson v. State,* 477 N.W.2d 709 (Minn.1991) and *State v. Hathaway,* 379 N.W.2d 498 (Minn.1985) (affirming the conviction of Gustafson's co-defendant-Guy Hathaway).

fied that he did not meet the men because he felt the robbery was too risky.

Eling testified on behalf of the defendants, stating that on October 24, he attempted to rob the pharmacy with Leslie and Dwyer, not Hathaway and Gustafson. Neither Gustafson nor Hathaway testified at their trial.

The jury found both Gustafson and Hathaway guilty of two counts of first-degree murder and one count of conspiracy to commit aggravated robbery. The district court convicted both men of first-degree murder and sentenced them to life in prison. Gustafson filed a direct appeal, arguing that (1) the court improperly joined his trial with Hathaway's trial; (2) Minn. R.Crim. P. 9.01, subd. 3(3) violated his right to obtain disclosure information and exculpatory evidence from the State; (3) law enforcement's use of photo displays violated his due process rights; and (4) the evidence was insufficient to convict him of the offenses for which he was charged. We affirmed Gustafson's conviction. *Gustafson*, 379 N.W.2d at 85.

Gustafson subsequently filed a petition for postconviction relief, claiming that he received ineffective assistance of trial counsel and that he was denied conflict-free counsel because his attorney agreed to share investigative duties with Hathaway's attorney. After a hearing, the postconviction court denied relief, and we affirmed. *Gustafson*, 477 N.W.2d at 713.

Sixteen years after we denied his first postconviction petition, Gustafson, who is now imprisoned in Nevada, filed the current petition for postconviction relief.[2] Gustafson argues he has newly discovered evidence showing that (1) the State made secret deals with Dwyer and Leslie in exchange for their testimony against him; (2) a police officer who investigated the robbery/murder falsely testified that he had confirmed Leslie's and Dwyer's alibis; and (3) the victim did not die of a gunshot wound to the head. The postconviction court, after discussing the facts at issue, the evidence, and the claims at length, denied Gustafson's petition without a hearing. The court also determined that Gustafson was not entitled to appointed counsel. Gustafson appealed to our court. On appeal, Gustafson reasserts his claims that a police officer testified falsely about the alibis of Leslie and Dwyer, and that the State made secret deals with Leslie and Dwyer to obtain their testimony.[3] In addition, Gustafson asserts that he is entitled to appointed counsel for this postconviction proceeding because his present imprisonment in Nevada impedes his access to the Minnesota legal system.

I.

When reviewing a postconviction court's denial of relief, we have "an obligation to extend a broad review of both questions of law and fact." *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003)

**2.** Under Minn.Stat. § 590.01, subd. 4(a)(2) (2006), a person convicted of a crime generally may not file a petition for postconviction relief if more than two years have passed since an appellate court disposes of the person's direct appeal. But "[a]ny person whose conviction became final before August 1, 2005, shall have two years after [August 1, 2005] to file a petition for postconviction relief." Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Law. 901, 1098. Because Gustafson filed the present postconviction pe-

tition before August 1, 2007, his petition is not barred by section 590.01. Further, as the postconviction court properly concluded, section 590.01 does not apply to claims of newly-discovered evidence, subject to some limitations not at issue here. Minn.Stat. § 590.01, subd. 4(b)(2) (2006).

**3.** Gustafson's claim concerning the cause of Walton's death appears to have been abandoned on appeal.

(internal quotation omitted). On review, we examine issues of law de novo and review findings of fact for sufficiency of the evidence. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007). To be entitled to an evidentiary hearing, a petitioner must "allege facts that are sufficient to entitle him or her to the relief requested" and the allegations must be " 'more than argumentative assertions without factual support.' " *Id.* (quoting *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995)). We have stated that "[p]ostconviction courts are required to hold an evidentiary hearing and make findings of fact and conclusions of law '[u]nless the petition and the files and records of the proceedings conclusively show that the petitioner is entitled to no relief.' " *Id.* (quoting Minn.Stat. § 590.04, subd. 1 (2006)).

■ When a "direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). But when a petitioner's claims are based on newly discovered evidence, as is asserted here, we have said that the "claim is not *Knaffla*-barred if the evidence was not available at the time of his direct appeal. *Schneider v. State*, 725 N.W.2d 516, 524 (Minn.2007)." A new trial will be granted on the basis of newly discovered evidence if the petitioner establishes that the evidence "(1) was not known to the defendant or his counsel at the time of trial; (2) could not have been discovered through due diligence before trial; (3) is not cumulative, impeaching, or doubtful; and (4) would probably produce an acquittal or a more favorable result." *Wayne v. State*, 747 N.W.2d 564, 566 (Minn.2008).

■ When a petitioner claims that he has newly discovered evidence of falsified testimony, we apply the *Larrison* test, un-der which a new trial is granted only if "(1) the court [is] reasonably well-satisfied that the trial testimony was false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after trial." *Wilson v. State*, 726 N.W.2d 103, 106 (Minn.2007). We have said that "[t]he first two prongs [of the *Larrison* test] are compulsory, but the third prong is not required in order to grant a new trial." *State v. Turnage*, 729 N.W.2d 593, 597 (Minn.2007).

■ Gustafson claims that Saint Paul Police Sergeant James Frank provided false testimony at trial when Frank stated that he had confirmed that Dwyer and his friend Johnny Johnson were in Wisconsin on the day of the robbery/murder. At trial, Frank testified that he confirmed Dwyer's alibi by speaking to three people: a deputy at the Wisconsin prison who Dwyer claimed had visited with Johnson; Mel Kusilek, the owner of Mel's Midtowner Bar; and Randy Kusilek, a bartender at Mel's bar. Frank testified that through his discussions with these people he confirmed Dwyer's whereabouts at the time of the robbery/murder. Frank further testified that Mel Kusilek told Frank that he did not know anyone named Dwyer. None of the men Frank said he interviewed regarding Dwyer's alibi testified at trial.

As evidence that Frank perjured himself, Gustafson submitted to the postconviction court a notarized affidavit from a private investigator—Jill Seacrist—stating that she spoke to Randy Kusilek in September 1993. According to Seacrist, Randy Kusilek told her that a Saint Paul homicide investigator interviewed him about 9 months after the robbery/murder and that he told the investigator "that he could not positively identify Johnny Johnson and another male (William Dwyer) being in Mel's

Midtowner Bar on the night of the St. Paul shooting." Further, after Seacrist sent Randy Kusilek a photograph of Dwyer, Randy Kusilek called Seacrist's office and told her that he had "never seen that person before."

Gustafson also submitted a signed, unnotarized affidavit from Mel Kusilek. In that affidavit, Mel Kusilek states that a Saint Paul homicide investigator questioned him approximately 1 year after the robbery/murder, and that he told the investigator that he was not working on the night of the robbery/murder. Mel Kusilek went on to state that he and Randy Kusilek "were each given a subpoena to testify in court," but that "[a]t a later date, [he] received a telephone call and was told that [he and Randy Kusilek] did not have to testify." Included with Mel Kusilek's affidavit was a picture of Dwyer, above which Mel Kusilek wrote, "[t]o my knowledge the man in [the] photograph is a complete stranger to me."

The postconviction court concluded that it was not satisfied that Frank's testimony regarding Dwyer's alibi was false, and therefore Gustafson had failed to satisfy the first prong of the *Larrison* test. In support of its conclusion, the court noted that the testimony of both Frank and Dwyer was "internally consistent as well as consistent with Sergeant [Franks'] police reports." Further, the court observed that Frank had disclosed to the jury that Mel Kusilek stated he did not know Dwyer.

We conclude that the postconviction court properly denied Gustafson relief based on his claim that Frank provided false testimony at trial about Dwyer's alibi. First, as discussed above, claims based on newly-discovered evidence are not subject to the *Knaffla* bar if "the evidence was not available at the time of [the petitioner's] direct appeal." *Schneider*, 725 N.W.2d at 524. In this case, Gustafson received Frank's police reports before trial, so he knew the substance of Frank's testimony. Further, at trial, Gustafson heard both Dwyer's and Frank's testimony about Dwyer's alibi. Finally, at the evidentiary hearing during Gustafson's first postconviction proceeding, both Gustafson and his two attorneys testified that at the time of trial, they knew about Dwyer's alibi and Mel Kusilek's identity. We therefore conclude that the evidence of Frank's alleged false testimony was available to Gustafson when he filed his direct appeal. Further, Gustafson had the opportunity to interview the men that Frank said confirmed Dwyer's alibi. Therefore, we hold that Gustafson's claim that he is entitled to relief on his claim that there is newly discovered evidence that a police officer provided false testimony at his trial is *Knaffla*-barred. *See Schneider*, 725 N.W.2d at 524.

## II.

■ Gustafson also claims that Sergeant Frank perjured himself when he testified that he confirmed Leslie's alibi. Leslie claimed that on the night of the robbery/murder, he was with Sherri Goodseth—his girlfriend at the time. Frank testified that he confirmed Leslie's alibi by speaking to Goodseth. Gustafson's claim that Frank provided false testimony is based on the assertion that no person named Sherri Goodseth exists. To support his claim, Gustafson submitted several internet searches of the name "Sherri Goodseth." These searches were done using several different internet search engines and included several spelling variations of the name Sherri Goodseth. The searches covered Minnesota and the rest of the United States. Every search of Sherri Goodseth's name that Gustafson

submitted to the court showed that there were no matching results.

The postconviction court concluded that it was not satisfied that Frank's testimony about Leslie's alibi was false. The court stated that Gustafson's "submissions of various internet searches [do] not suggest that Sherri Goodseth does not exist. Despite the reach of the world wide web, not every individual appears in an internet search." Because of this conclusion, the court declined to analyze the remaining two *Larrison* factors.

We conclude that the postconviction court properly concluded that although Sherri Goodseth's name does not appear on the internet, this absence does not prove that Sherri Goodseth does not exist. Gustafson's internet searches were the only evidence that he offered to prove that Frank provided false testimony about Leslie's alibi, and we are not "reasonably well-satisfied" that this evidence shows Frank's trial testimony was false. *Wilson,* 726 N.W.2d at 106. We therefore conclude that Gustafson "fail[ed] to allege facts that are sufficient to entitle him [ ] to the relief requested." *Leake,* 737 N.W.2d at 535. Thus, we hold that the postconviction court did not err when it denied Gustafson relief based on his claim that Frank provided false testimony about Leslie's alibi.

### III.

 Gustafson next asserts that the State made a secret deal with Leslie in order to obtain Leslie's testimony.[4] Gustafson's only evidence to support this claim is a police report written on November 24, 1982, purportedly by a Florida police officer. The report recounts the arrest of Leslie for his suspected participation in an armed robbery. In this report, the Flori-

da officer states that Sergeant Frank had contacted him and that based on this conversation the officer learned that Leslie "is reportedly a star prosecution witness in the murder of a St. Paul, Minn., police officer." The officer further states that he "called Sgt. Frank and spoke to him about the case in Minnesota," and that Frank advised the officer "that [Leslie] would fight extradition back to the State of Florida."

We conclude that Gustafson's claim that the State made a secret deal with Leslie is "an argumentative assertion[ ] without factual support." *Leake,* 737 N.W.2d at 535. Nothing in the police report that Gustafson submitted suggests anything other than the fact that Minnesota authorities made Florida authorities aware that Leslie was an important witness in an upcoming trial. There is no indication that Leslie was shown or promised leniency in return for his testimony. Because Gustafson failed to provide factual support for his claim, we hold that the postconviction court properly denied relief based on this claim.

### IV.

 Gustafson also asserts that the State made a secret deal with Dwyer to obtain his testimony. Gustafson claims that Minnesota authorities worked with Missouri authorities to give Dwyer leniency in a Missouri criminal matter—charges associated with an armed robbery—in return for Dwyer's testimony at Gustafson's trial. In support of this claim, Gustafson submitted a copy of the transcripts of Dwyer's guilty plea and sentencing hearings in Missouri circuit court.

---

4. The postconviction court did not address this claim in its order, but Gustafson raised it in his postconviction petition.

We conclude, as we recently did in code-fendant Hathaway's second petition for postconviction relief, that "the trial record indicates that [Gustafson] either knew or should have known of the details of Dwyer's plea agreement at the time of trial, and certainly no later than the time of his first petition for postconviction relief." *Hathaway v. State*, 741 N.W.2d 875, 879 (Minn.2007). First, Gustafson's attorney questioned Dwyer at trial about his pending Missouri plea agreement. Second, Dwyer entered into the plea agreement in October 1984 and was sentenced pursuant to the agreement in December 1984. It was after that time that Gustafson filed his direct appeal and his first postconviction petition. He was represented by counsel in both proceedings. Gustafson asserted in his pro se petition on direct appeal that Dwyer offered false testimony at trial. Gustafson also raised the same issue again as part of the claim of ineffective assistance of counsel that he raised in his first postconviction proceeding. Despite this timeframe and prior knowledge, Gustafson did not raise the issue of Dwyer's Missouri plea agreement on direct appeal or during his first postconviction proceeding.

Furthermore, while we note that Gustafson is not at fault for being unable to obtain the parts of Dwyer's plea agreement and sentencing hearing that were omitted from the transcript, Gustafson provides no explanation for why the transcript, though incomplete, was unavailable to him at the time of his direct appeal or his first postconviction proceeding. Be-cause this evidence was available to Gustafson at the time of his direct appeal and his first postconviction proceeding, we conclude that Gustafson's claim is barred by *Knaffla*. *See Schneider*, 725 N.W.2d at 524. Therefore, we hold that Gustafson is not entitled to relief on the ground that the State made a "secret" deal with Dwyer in return for Dwyer's testimony.

## V.

 Finally, Gustafson claims that he is entitled to appointed counsel because he does not have sufficient access to Minnesota courts from the Nevada prison in which he is presently serving his sentence. Minnesota Statutes § 590.05 (Supp.2007) provides that "[t]he state public defender *shall* represent [a person financially unable to obtain counsel] if the person has not already had a direct appeal of the conviction." (Emphasis added). But section 590.05 also states that "[t]he state public defender *may* represent, without charge, all other persons pursuing a postconviction remedy under section 590.01, who are financially unable to obtain counsel." (Emphasis added). Under section 590.05, a petitioner has a right to appointed counsel for his direct appeal proceedings; but, a petitioner who has already had a direct appeal is not entitled to appointed counsel for subsequent postconviction appeals. Because Gustafson has already had a direct appeal, as well as one prior postconviction review, he is not statutorily entitled to appointed counsel for the present postconviction proceeding.[5] In addition,

5. We note that Gustafson's request for appointed counsel appears to primarily upon his inability to access the Minnesota court system from his Nevada prison. In a letter to the postconviction court, Gustafson attached a written policy of the Nevada prison that states, "law library supplies and services are for Nevada cases only, mail to anyone outside of the State of Nevada is not legal mail and will be returned unmailed." Further, Gustafson asserts that the only access he has to Minnesota legal resources is a paging system, which allows him to request specific cases or statutes but does not provide him any method to research which cases or statutes to request.

The United States Supreme Court has said that prisoners are constitutionally entitled to

because Gustafson was represented by counsel both on direct appeal and in his previous postconviction review, he has no constitutional right to counsel in this proceedings. *See Deegan v. State,* 711 N.W.2d 89, 98 (Minn.2006) (construing the Minnesota Constitution); *see also Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Therefore, we hold that the postconviction court did not err when it denied Gustafson's motion for appointed counsel.

Affirmed.

meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821–22, 824, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). But to receive relief on such a claim, the inmate must

> demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered argu-ably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Nevertheless, Gustafson did not develop sufficient facts showing that he has been denied meaningful access to the courts. Because we lack the information necessary to determine whether Gustafson is being denied meaningful access to the courts, we decline to address the issue.