*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1241**

State of Minnesota,
Respondent,

vs.

Luis Daniel Ruiz-Oliva,
Appellant.

**Filed February 1, 2016
Affirmed
Cleary, Chief Judge**

Blue Earth County District Court
File No. 07-CR-12-4170

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Stauber, Judge; and Randall, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Luis Daniel Ruiz-Oliva challenges his conviction for third-degree assault in violation of Minn. Stat. § 609.223, subd. 1 (2010). Appellant asserts that his representation at trial constituted ineffective assistance of counsel because his counsel (1) failed to investigate and present a self-defense claim; (2) failed to request a self-defense jury instruction; and (3) relied on an incorrect legal standard for assault. Appellant also asserts that the prosecution committed misconduct by mischaracterizing evidence and inflaming the passions of the jury. We affirm.

## FACTS

On May 16, 2012, at approximately 3:00 a.m., appellant arrived with a friend at the friend's Mankato, Minnesota apartment building. Appellant and the friend engaged in an argument during which the friend demanded that appellant leave her apartment. The friend then locked appellant out of her apartment, and the argument grew louder.

Meanwhile, Elliott Reed, an upstairs neighbor in the apartment building, was trying to sleep. At approximately 4:00 a.m., Reed awoke to the sound of loud voices and pounding coming from downstairs. Reed testified that when he went down to the floor below, he saw appellant leaning against the door frame of an apartment. Reed approached appellant to tell him that he was being very loud and that Reed's neighbor was asking him to leave. Reed testified that appellant was facing away from him, and when he spoke, appellant turned around and looked at Reed, but didn't appear to have heard or paid

2

attention to what Reed said. Reed then tapped on appellant's shoulder, and appellant turned and struck Reed with his fist.

Appellant testified that he had been assaulted earlier in the night and when he felt the tap on his shoulder he believed it may have been the person who had assaulted him. Because of this, he turned around and swung his arm. Appellant recalls hitting Reed, but, when asked by defense counsel if he intended to hit Reed, he testified that he did not try to hurt anyone and that turning around and swinging was just a reaction.

Appellant was charged with third-degree assault-substantial bodily harm, under Minn. Stat. § 609.223, subd. 1, and was found guilty after a jury trial. Appellant filed a notice of appeal with this court, but the appeal was stayed pending appellant's petition for postconviction relief. The postconviction court denied appellant's request for an evidentiary hearing regarding his claims of ineffective assistance of counsel and prosecutorial misconduct and denied the petition for postconviction relief. This appeal followed.

## D E C I S I O N

### Ineffective assistance of counsel

Appellant asserts that trial counsel's performance fell below an objectively reasonable standard because she failed to investigate and present a self-defense claim, failed to request a self-defense jury instruction, and improperly focused on and misstated the legal standard for the assault crime with which appellant had been charged. Appellant requests that this court reverse his conviction and remand for a new trial or, in the alternative, remand for an evidentiary hearing on this issue.

3

This court reviews a postconviction court's denial of a claim of ineffective assistance of counsel, including a denial without an evidentiary hearing, for abuse of discretion. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). Whether counsel's performance constitutes ineffective assistance of counsel is a mixed question of law and fact. *Id.* Factual findings will be upheld unless they are clearly erroneous, and legal conclusions are reviewed de novo. *Id.*

The Sixth Amendment guarantees a right to a fair trial and, to ensure that a fair trial is conducted, a right to the assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 2063 (1984). Because legal counsel "plays the role necessary to ensure that the trial is fair," the Sixth Amendment's guarantee of "the right to counsel is the right to *effective* assistance of counsel." *Id.* at 685-86, 104 S. Ct. at 2063 (emphasis added). When asserting a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test: "(1) [T]hat trial counsel's performance fell below an objective standard of reasonableness; and (2) that a reasonable probability exists that, but for counsel's errors, the outcome . . . would have been different." *State v. Radke*, 821 N.W.2d 316, 323 (Minn. 2012).

Upon a petition for postconviction relief, the postconviction court must schedule a hearing "unless the petitioner's allegations and the files and the records of the proceeding *conclusively* show that the petitioner is entitled to no relief." *Nicks*, 831 N.W.2d at 504 (citing Minn. Stat. § 590.04, subd. 1). Such a petition "must recite facts that would, if proven by a preponderance of the evidence, entitle the petitioner to a new trial." *Caldwell v. State*, 853 N.W.2d 766, 770 (Minn. 2014). Additionally, "[t]he petitioner's allegations

4

must be more than argumentative assertions without factual support." *Robinson v. State*, 567 N.W.2d 491, 494 (Minn. 1997).

First, appellant asserts that trial counsel did not make a reasonable effort to investigate and prepare a self-defense theory. This court generally does not review counsel's trial strategy. *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004). When trial counsel's strategy proves to ultimately be unsuccessful, it can be "all too easy for a court . . . to conclude that a particular act or omission of counsel was unreasonable." *Carney v. State*, 692 N.W.2d 888, 892 (Minn. 2005). Because of this, the reasonableness of counsel's challenged conduct must be evaluated based on the facts of the particular case, viewed in light of the facts known at the time that counsel engaged in the challenged conduct. *Id.* Thus, a high degree of deference is afforded to trial counsel's strategy, with a "strong presumption that counsel's performance was reasonable." *Id.*

The extent of trial counsel's investigation is normally considered to be part of trial strategy. *Opsahl*, 677 N.W.2d at 421. "We are in no position to second-guess counsel's decision to focus his strategy on other defenses . . . ." *Id. But see State v. Rhodes*, 657 N.W.2d 823, 843 (Minn. 2003) ("[I]f no reason is or can be given for a tactic, the label 'tactic' will not prevent it from being used as evidence of ineffective assistance of counsel.") (alteration in original) (quotation omitted). The supreme court has held that "trial strategy" does not include an attorney's decision to present a particular theory of the case where the attorney failed to secure the key evidence required to prove that theory. *Nicks*, 831 N.W.2d at 505-07 (rejecting a "trial strategy" argument where trial counsel relied on the existence of favorable cellphone record evidence, but, due to inattention and

5

misunderstanding, failed to obtain it). However, the supreme court has held that an informed decision by trial counsel to decline to investigate a certain theory is generally the type of trial strategy that will not be reviewed. *Opsahl*, 677 N.W.2d at 421 (finding that decision not to investigate alternative suspects and evidence of tire tracks found at the scene of the crime constitutes trial strategy).

Appellant has not alleged facts that could establish that trial counsel was unreasonable in not further investigating or presenting a self-defense claim at trial. As appellant admits, trial counsel "had information about the earlier assault because she also represented appellant in another criminal matter." The district court determined it was likely, "given the facts of this case, that trial counsel strategized a defense of self would not only be ineffective, but negatively impact [appellant's] credibility." "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 5 (2003). Given counsel's knowledge of the earlier assault and decision not to pursue a self-defense strategy, there is nothing in the record to indicate that the extent to which trial counsel investigated the theory further was unreasonable.

Additionally, it is not clear what beneficial facts appellant believes further investigation would have uncovered. Appellant had the opportunity to testify to his fears and impetus for striking Reed. He does not allege that trial counsel ever intended to pursue or did present a self-defense claim or attempted to rely on evidence for her trial strategy and then failed to present that evidence. To the contrary, trial counsel indicated from the outset of the case that self-defense would not be alleged. Trial counsel's strategy decision

6

not to present a self-defense argument was not unreasonable in light of the facts in the record.

Appellant has not presented facts which, if proven, would satisfy the *Strickland* test, and does not allege how a postconviction hearing on the issue would have produced such facts. The district court's denial of a hearing on this issue was not an abuse of discretion.

Next, appellant argues that trial counsel's performance was deficient because she relied on an incorrect legal standard. Appellant was charged with third-degree assault-substantial bodily harm, under Minn. Stat. § 609.223, subd. 1, which makes it a crime to assault another and inflict substantial bodily harm. Although Minn. Stat. § 609.223, subd. 1, does not directly state an intent element, the statutory definition of "assault" does. A person commits assault-fear by taking an action with intent to cause fear of immediate bodily harm or death, and commits assault-harm by intentionally taking an action the perpetrator believes will cause bodily harm to another. Minn. Stat. § 609.02, subds. 9, 10 (2010); *State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012) (stating that assault-harm is a general intent crime, meaning that "[a]lthough the definition of assault-harm requires the State to prove that the defendant intended to do the physical act, nothing in the definition requires proof that the defendant meant to violate the law or cause a particular result"). Appellant argues that trial counsel acted unreasonably because "[b]y focusing on appellant's intent, and particularly on his lack of intent to harm Reed, counsel was arguing as if the case was an assault-fear case." However, trial counsel's examination of appellant appears to be consistent with the assault-harm statute and the definition of "assault."

7

The record reflects that trial counsel attempted to argue that appellant's actions were essentially an unconscious reflex, and that he did not intend to strike the victim. Although this theory did not prevail, it did not rely on an unreasonable misunderstanding of the law. Had counsel succeeded in persuading the jury that appellant did not intend to take an action that was likely to cause harm, the jury could have found him not guilty. Additionally, appellant had an opportunity to testify and present his account of the events. Intent is an element of any assault charge, and attempting to show that appellant did not intend to take an action likely to cause bodily harm was not an unreasonable strategy.

Finally, appellant correctly argues that during closing arguments, trial counsel erroneously defined the crime at issue. Counsel stated, "The definition of an assault under the statute reads an act done with intent to cause fear in another of immediate bodily harm—that's what an assault is." This is the definition of assault-fear, whereas appellant was charged with assault-harm.

However, even assuming, *arguendo*, this mistake caused counsel's performance to fall below an objective standard of reasonableness, it did not prejudice appellant. This was the only time at which counsel misstated the definition and the mistake did not inform the presentation of the case in a meaningful way. Additionally, the jury was repeatedly informed of the correct definition. The prosecutor immediately noted defense counsel's mistake. Then, in her instructions to the jury, the trial judge defined the crime with which appellant was charged:

> The statutes of Minnesota provide that whoever assaults another and inflicts substantial bodily harm is guilty of a crime. The elements of assault in the third degree are first, the

> defendant assaulted another person. An assault is the intentional infliction of bodily harm upon another. Second, the defendant inflicted substantial bodily harm on that person.

The judge then stated, "It is not necessary for the State to prove that the defendant intended to inflict substantial bodily harm, but only that the defendant intended to commit the assault." After hearing this instruction and considering the evidence, the jury reached a verdict of guilty. Appellant has not alleged facts that would prove there is a reasonable probability the outcome at trial would have been different, but for trial counsel misstating the legal standard.

**Prosecutorial misconduct**

Appellant argues that the prosecution committed misconduct by mischaracterizing evidence and inflaming the passions of the jury. Because trial counsel did not object to the state's opening and closing statements that appellant now claims were misconduct, this issue can only be reviewed if the prosecution's conduct constitutes "(1) error, (2) that is plain, and (3) affects substantial rights." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Appellant has the burden of demonstrating that there was error and that the error was plain. *Id.* "An error is plain if it was clear or obvious." *Id.* (quotations omitted). If these first two elements are established, the burden shifts to the state to show that there is no "reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted).

In arguments to the jury, the prosecution may argue all reasonable inferences to be drawn from the facts in the record, but may not intentionally misstate the evidence or mislead the jury as to the inferences it may draw. *State v. Salitros*, 499 N.W.2d 815, 817

9

(Minn. 1993). "While the state's argument need not be colorless, it must be based on the evidence produced at trial, or the reasonable inferences from that evidence." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995) (quotation omitted). Courts have generally found prosecutorial misconduct in cases where there is no factual basis for statements made. *See, e.g.*, *State v. Thompson*, 578 N.W.2d 734, 742 (Minn. 1998) (holding that prosecution's statements speculating about the crime and the state of mind of the victims were improper).

Here, Reed testified that he left his apartment because the argument between appellant and his neighbor kept him awake. Reed approached appellant and told him that he was trying to sleep and that it seemed Reed's neighbor was asking appellant to leave. During opening and closing statements, the prosecution made references to Reed getting punched after coming to help out his neighbor and generally portrayed Reed as getting attacked for being a good neighbor.

The prosecution's statements are reasonable inferences from facts in evidence. Reed's testimony provides the basis for the prosecution's statements. A reasonable inference from Reed's testimony is that Reed got involved for the purpose of getting some sleep, as well as to help a neighbor rid herself of an apparently unwanted guest. Attorneys are given "considerable latitude" in their closing arguments. *State v. Smith*, 541 N.W.2d 584, 589 (Minn. 1996). The fact that the prosecution decided to focus on this inference from Reed's testimony does not constitute plain error.

With regard to inflaming the passions of the jury, appellant does not cite any specific statement made by the prosecution that constitutes the alleged misconduct. It appears that

10

appellant is asserting that the prosecutor's general theme of painting Reed as "the good guy who came to rescue the 'damsel in distress' from appellant" inflamed the passions of the jury. In support, appellant relies mainly on *State v. Porter*, in which the supreme court held that a prosecutor's suggestion that jurors would be "suckers" if they believed a defense witness, the prosecutor's offer to jurors of a "timeshare in Santa's condo" if they did believe the witness, and his statement that "there was no salve or sedative to make them feel good about acquitting [defendant], was more than the use of colorful language." 526 N.W.2d at 364. "The statements were a blatant attempt to impinge on juror independence." *Id.*

The prosecutor's statements in this case do not rise to the level of an attempt to "impinge on juror independence." *Id.* The prosecutor interpreted the facts, while drawing permitted inferences, to tell the story of what happened that night in a way that was favorable to the state's theory that Reed was coming to his neighbor's aid or assistance. The prosecutor did not commit plain error in his opening and closing statements to the jury. The district court did not abuse its discretion by dismissing appellant's petition for postconviction relief and appellant's request for an evidentiary hearing regarding that petition.

**Affirmed.**